# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SCOTT B. SULLIVAN,

    **Plaintiff,**

    v.

ADVENTIST HEALTH SYSTEMS, et al.,

    **Defendants.**

Case No. 18-2606-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Scott B. Sullivan filed this *pro se* action against Adventist Health Systems ("AHS"), General Conference Corporation of Seventh-Day Adventists ("General Conference"), Shawnee Mission Medical Center ("SMMC"), Shawnee Mission Primary Care ("SMPC"), Neurosurgery Associates, and New Haven Seventh-Day Adventist Church ("New Haven SDA") (collectively, "Defendants"), as well as numerous individual Defendants, discussed below.

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 15). The Amended Complaint spans 50 pages and includes numerous allegations.[1] Highly summarized, Plaintiff alleges medical malpractice and disability discrimination under the Americans with Disabilities Act ("ADA"), obstruction of justice under various statutes, racketeering, violations under 42 U.S.C. § 1981, and several state law claims including violations of the Kansas Consumer Protection Act, breach of contract, and tortious interference with a contract.

On May 11, 2019, Plaintiff filed for a Motion For Leave to File a Surreply (Doc. 21). The Court **grants** Plaintiff leave, and accordingly, considers the attached Surreply for purposes

---

[1] Doc. 12.

of deciding this Motion. The Court declines Plaintiff's request for oral argument,[2] and the Court is prepared to rule. For the reasons stated below, Defendants' Motion to Dismiss is **granted**. This case is dismissed in its entirety.

## I. Unserved Defendants

As an initial matter, the following Defendants have not been served: Ken Bacon, Rebecca Messerli, Harlow Schmidt, Amanda Diskin, Mark Fenton, Gregory Sweat, Steven Hess, Douglas Elsey, Doug Ludwig, and Steve Irvin (collectively, "Unserved Defendants"). Under Fed. R. Civ. P. 4(m), a plaintiff has 90 days from the filing of a complaint to serve the defendants. "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[3] "The Tenth Circuit has explained that even if a plaintiff has not shown good cause for the failure to timely effect service, the district court should still consider whether a permissive extension of time may be warranted."[4] Once the district court has considered the extension, "the district court may in its discretion either dismiss the case without prejudice or extend the time for service."[5] Plaintiff filed his Complaint on November 14, 2018, thereby making Plaintiff's deadline for service of summons February 12, 2019.[6] This deadline has passed. Plaintiff asserts it is not possible for

---

[2] D. Kan. Rule 7.2 ("The court *may* set any motion for oral argument or hearing at the request of a party or on its own initiative") (emphasis added).

[3] Fed. R. Civ. P. 4(m).

[4] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

[5] *Id.*

[6] Plaintiff filed for and was granted leave to proceed *in forma pauperis*. Doc. 4. In the order, Plaintiff was directed to provide complete address information of the Unserved Defendants to the Clerk's Office by January 3, 2019 for summons of service. *Id.* Plaintiff failed to do so.

2

him to obtain the addresses to serve the Unserved Defendants without discovery.[7] However, the Court finds that an extension of time to complete service in this case is futile because, as discussed below, Plaintiff fails to state a claim on which relief may be granted as to any Defendant.[8] Accordingly, the Court declines to grant Plaintiff an extension of time to serve the Unserved Defendants.

## II.     Background

The Court derives the following facts from Plaintiff's Amended Complaint and construes these facts in the light most favorable to Plaintiff.

On October 15, 2015, Menorah Medical Center diagnosed Plaintiff with Tarlov Cyst Disease.[9] Tarlov Cyst Disease is a congenital connective tissue disorder that affects the central and peripheral nervous systems. Plaintiff suffers from severe back pain, neuropathy, and other painful symptoms.[10]

Plaintiff suffered from a work-related injury on January 9, 2012. In October 2012, Plaintiff visited SMMC but they "refused to look at [his] back."[11] On separate visits in 2012, Plaintiff was left unattended in a back hallway for over an hour and on another visit, was taken to a room with no medical equipment before being given a psychological evaluation and discharged.[12]

---

[7] Doc. 12 ¶¶13–17, 19, 21, 23-25.

[8] Plaintiff proceeds *in forma pauperis*. Under 28 U.S.C. § 1915(e)(2), "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." When performing the evaluation, the Court applies the same standard of review as under Fed. R. Civ. P. 12(b)(6). *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007).

[9] Doc. 12 ¶145.

[10] *Id.* ¶41.

[11] *Id.* ¶18.

[12] *Id.* ¶133.

On February 16, 2016, and November 8, 2016, Plaintiff went to SMMC with "Tarlov Cyst Symptoms" and "evidence, records, and MRI imagery documenting cysts across the sacral region."[13]  No spinal evaluation was performed.  During the November examination, Plaintiff's "leg curled and [his] foot became completely paralyzed."[14]  The medical staff made him stand up and place his weight on the numb leg and he collapsed to the ground.  No doctor treated Plaintiff for Tarlov Cyst disease at either of these visits.

Plaintiff alleges that SMMC "flags" medical records in a discriminatory manner, including those which fit the profile of an opioid drug seeker.[15]  Plaintiff alleges that those flagged are considered undesirable patients and denied medical services.[16]  Plaintiff also alleges "billing for unnecessary services," including a visit in 2012 by Dr. Alaa Elhaj who spent less than ten minute talking to Plaintiff and then billed him "$275 at the out-of-network rate for a 110 minute consultation."[17]

Plaintiff asserts SMMC, New Haven SDA, and AHS committed "wire and mail fraud," and therefore committed racketeering.[18]  Plaintiff asserts New Haven SDA "attempted to harass, coerce, extort, or intimidate" Plaintiff,[19] because New Haven SDA "wanted the AdventHealth hospitals to be the ones who profited from the rampant corruption and fraud that occurs within

---

[13] *Id.* ¶117.
[14] *Id.*
[15] *Id.* ¶143.
[16] *Id.* ¶¶117, 148.
[17] *Id*. ¶104.
[18] *Id.* ¶58.
[19] *Id.*¶152.

the health care industry."[20]  When discussing this corruption, an Elder of the church told Plaintiff "'[s]o what. . . . If it wasn't that person it would be someone else.'"[21]

Finally, Plaintiff asserts SMMC, SMPC, AHS along with New Haven SDA and General Conference together obstructed justice with respect to Plaintiff's other claims by "refus[ing] to acknowledge Tarlov Cyst Disease,"[22] and by intimidating Plaintiff so he would not bring this and similar law suits.[23]  Plaintiff asserts SMMC and Neurosurgery Associates conspired with Twin Cities Fire Insurance, The Hartford, and OnForce to "obstruct [Plaintiff's] access to benefits during the February 26th, 2016 ER visit."[24]  Plaintiff asserts "[t]his case is about doctors conspiring with each other, and with hospitals, and in this case, even church elders; to harass, intimidate, and coerce a victim of malpractice, insurance fraud, and ADA violations."[25]

## III. Legal Standard

Fed. R. Civ. P 12(b)(1) provides for dismissal of a claim where the court lacks subject matter jurisdiction.  Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[26]  A court lacking jurisdiction must dismiss the claim, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[27]  The party who seeks to invoke federal jurisdiction bears the burden of

---

[20] *Id.*

[21] *Id.* ¶153.

[22] *Id.* ¶97.

[23] *Id.* ¶¶57, 150, 152, 156.

[24] *Id.* ¶63.

[25] *Id.* ¶57.

[26] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal citations omitted)).

[27] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

establishing that such jurisdiction is proper.[28] Mere conclusory allegations of jurisdiction are not enough.[29]

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a claim where the plaintiff has failed "to state a claim upon which relief can be granted." To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] When evaluating a 12(b)(6) motion to dismiss, the court must accept all facts well-pleaded by the non-moving party as true and must grant all reasonable inferences in favor of the non-moving party.[32] Legal conclusions couched as factual allegations are not accepted as facts by the court.[33] For the court to deny this motion, a plaintiff must state a plausible claim, which requires "sufficient factual allegations to 'raise a right to relief above the speculative level.'"[34]

Where "the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56."[35] The court should do so by converting the Rule 12(b)(1) Motion for lack of jurisdiction to a 12(b)(6) Motion to Dismiss.[36] "When deciding whether jurisdiction is

---

[28] *Montoya*, 296 F.3d at 955.

[29] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[30] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[32] *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[33] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[34] *Id.*

[35] *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999); *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).

[36] *Franklin Sav. Corp.*, 180 F.3d at 1129.

intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"[37]

Finally, because Plaintiff proceeds *pro se*, some additional considerations frame the Court's analysis. The court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[38] However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[39] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[40]

## IV. Discussion

### A. Jurisdiction

Plaintiff bears the burden of establishing that federal jurisdiction exists.[41] Plaintiff asserts that the Court has federal question jurisdiction pursuant to his federal claims, which include claims under the ADA, racketeering, 28 U.S.C. § 1361, and 42 U.S.C. § 1981.[42] Further, Plaintiff asserts that the Court may have diversity jurisdiction upon dismissal of non-diverse parties.[43]

---

[37] *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002)).

[38] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[39] *Id.*

[40] *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[41] *McBride v. Doe*, 71 F. App'x 788, 789–90 (10th Cir. 2003) (holding a *pro se* plaintiff attempting to assert diversity jurisdiction bears the burden of establishing federal jurisdiction if plaintiff wishes to invoke such federal jurisdiction, despite the plaintiff's *pro se* status).

[42] Doc. 12 ¶3. Plaintiff additionally asserts proper jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1337. The Court considers only the specific federal statutes under which federal jurisdiction may be conferred.

[43] Doc. 18 at 20.

Plaintiff has not established diversity jurisdiction. Diversity jurisdiction requires (1) complete diversity of citizenship between the Plaintiff and Defendants and (2) the amount in controversy must exceed $75,000.[44] While the amount in controversy requirement of $75,000 is met, the parties are not completely diverse. Plaintiff is a citizen of Kansas.[45] Defendants SMMC, SMPC, and New Haven SDA are citizens of Kansas.[46] AHS is a citizen of Florida and General Conference is a citizen of Maryland.[47] Because Plaintiff and several defendants are citizens of the same state, the Court does not have diversity jurisdiction.[48]

As discussed above, when questions of jurisdiction are "intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56."[49] Here, the issue of federal question jurisdiction is intertwined with the merits of Plaintiff's claims. Accordingly, the Court will, pursuant to Fed. R. Civ. P. 12 (b)(6), consider whether Plaintiff has stated a federal claim upon which relief may be granted.

### B. Federal Claims

As an initial matter, to the extent Plaintiff asserts claims on behalf of other allegedly similarly situated individuals with Tarlov Cyst Disease, the Court finds that he does not have

---

[44] 28 U.S.C. 1332; *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 553 (2005).

[45] Doc. 1 at 1. Plaintiff does not assert Diversity as a basis for jurisdiction in his Amended Complaint (Doc. 12). Nevertheless, he asserts that it might exist in his Response (Doc. 18 at 20). Out of an abundance of caution, the Court considers whether Plaintiff has established diversity jurisdiction.

[46] Docs. 6 at 2, 5 at 2, 7 at 2.

[47] Docs. 8 at 2, 9 at 2.

[48] Out of an abundance of caution, the Court addresses Plaintiff's assertion that the Court may dismiss the non-diverse parties as an alternative to dismissal of the entire case. There is no motion to dismiss the non-diverse parties before the Court. The Court will not construe Plaintiff's one sentence assertion from his 58-page Reply as a motion to voluntarily dismiss SMMC, SMPC, or New Haven SDA.

[49] *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999); *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).

standing to do so.[50] Accordingly, the Court only considers Plaintiff's individual claims.

### 1. ADA

First, Plaintiff asserts a claim for disability discrimination and medical malpractice under the ADA. To establish a prima facie case under the ADA, a "plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."[51] To establish the first element, a plaintiff is obligated to show that he was "otherwise qualified" for the benefits he sought.[52] The Tenth Circuit has held that "the term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.'"[53] In *Fitzgerald v. Corr. Corp. of Am.*, the plaintiff alleged the doctors and jail staff refused to treat him for his diabetes because he was disabled with diabetes.[54] The court held the plaintiff was not "otherwise qualified" for treatment in the absence of his disability.[55] The court explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'"[56] "These are the sort of purely medical decisions that we have held do not ordinarily fall within the scope

---

[50] *See RMA Ventures Cal. v. SunAmerica Life Ins.*, 576 F.3d 1070, 1073 (10th Cir. 2009) ("A well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others.").

[51] *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007); *J. V. ex rel. C. V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). The Court construes Plaintiff's claims under Title II of the ADA. *See generally* 42 U.S.C. § 12132.

[52] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (citing *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)).

[53] *Id.*

[54] 403 F.3d at 1144.

[55] *Id.*

[56] *Id.* (quoting *United States v. Univ. Hosp.*, 729 F.2d 144, 157 (2nd Cir. 1984)).

of the ADA."[57]

Plaintiff alleges that SMMC medical professionals refused to diagnose Plaintiff with, or treat Plaintiff for, Tarlov Cyst Disease[58] because he has Tarlov Cyst Disease.[59] Indeed, Plaintiff explicitly states, "[m]y allegation is that I was provided with some medical care, but that I was not provided with the medical care which is prescribed for the treatment of Tarlov Cyst Disease."[60] Plaintiff is not "otherwise qualified" for treatment of Tarlov Cyst Disease in the absence of his alleged disability, Tarlov Cyst Disease. Accordingly, Plaintiff fails to state a prima facie case under the ADA because he fails to plausibly plead that he was "otherwise qualified" for the benefits he sought.

Plaintiff also alleges a violation of "Section 12210."[61] 42 U.S.C. § 12210(c) states, "an individual shall not be denied health services, or services, provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs *if the individual is otherwise entitled to such services*." Plaintiff has failed to show that he was otherwise entitled to any medical services to treat Tarlov Cyst Disease. Similarly, to the extent Plaintiff asserts that Defendants failed to provide him with specific medical treatments "prescribed for the treatment of Tarlov Cyst Disease"[62] based on "suspected mental illness,"[63] the Court finds once again that

---

[57] *Id.*

[58] Doc. 12 ¶56.

[59] *Id.* ¶¶56, 148.

[60] Doc. 18 at 30.

[61] Doc. 12 ¶110.

[62] Doc. 18 at 30.

[63] Doc. 12 ¶110.

"[t]hese are the sort of purely medical decisions that we have held do not ordinarily fall within the scope of the ADA."[64]

Moreover, to the extent Plaintiff asserts a claim for medical malpractice or negligence under the ADA, it is well settled law in the Tenth Circuit that the ADA does not provide a private right of action for medical malpractice.[65] While Plaintiff asserts that his ADA claim is not one for medical malpractice,[66] Plaintiff's Amended Complaint repeatedly refers to the allegations as such.[67] Plaintiff asserts that medical professionals at SMMC committed medical malpractice in the way they treated Plaintiff, namely by discriminatorily failing to timely diagnose or treat Plaintiff for Tarlov Cyst Disease. The Court finds that Plaintiff's ADA discrimination claims are in essence medical malpractice claims. Accordingly, Plaintiff has failed to plausibly plead an actionable claim under the ADA.

### 2. Obstruction of Justice

Plaintiff also alleges "obstruction of all forms of justice as an expression of political, religious, ideological, or personal motivations."[68] Plaintiff asserts Defendants obstructed justice with respect to Plaintiff's claims by intimidating Plaintiff so he would not bring law suits against Defendants,[69] and Defendants SMMC and Neurosurgery Associates conspired with several entities, which are not parties in this case, including Twin Cities Fire Insurance, the Hartford, and OnForce to "obstruct [Plaintiff's] access to benefits during the February 26th, 2016 ER

---

[64] *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (quoting *United States v. Univ. Hosp.*, 729 F.2d 144, 157 (2nd Cir. 1984)).

[65] *See id.*; *Anderson v. Colorado*, 848 F. Supp. 2d 1291, 1300 (D. Colo. 2012).

[66] Doc. 18 at 9.

[67] *See* Doc. 12 at 19, 20, 23, 39, 41, 43, 45; Doc. 18 at 9, 11, 13, 14, 16, 18, 23, 27, 28, 31, 41, 43, 45, 46, 48, 49, 54, 55.

[68] *Id.* ¶149.

[69] *Id.* ¶¶ 150, 152, 156.

visit."[70] Plaintiff also asserts the doctors, hospitals, and church elders have conspired to "harass, intimidate, and coerce" Plaintiff and thus committed obstruction of justice.[71]

As an initial matter, "obstruction of justice" is a criminal statute and therefore creates no private right of action.[72] Further, to the extent Plaintiff seeks to bring an obstruction of justice claim under the ADA or § 1981, no such cause of action exists under either statute. Moreover, regardless of the statute the claim is brought under, Plaintiff's conclusory allegations fail to state a claim for relief. Finally, to the extent Plaintiff's obstruction claim relies on a conspiracy, "[a] plaintiff must make more than conclusory allegations of the existence of a conspiracy; it must set forth some supporting factual details in order to sustain a claim for relief."[73] Accordingly, Plaintiff has failed to state an obstruction of justice claim upon which relief may be granted based on the limited facts pled in his Amended Complaint.

### 3. Racketeering

Next, Plaintiff alleges "racketeering."[74] The Court construes this as a claim brought under the Racketeer Influenced Corrupt Organizations Act ("RICO").[75] To plausibly plead a RICO claim, Plaintiff must offer factual support to establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[76]

Plaintiff asserts SMMC, New Haven SDA, and AHS committed racketeering by

---

[70] *Id.* ¶63.

[71] *Id.* ¶57.

[72] 18 U.S.C. §§ 1501-1521.

[73] *Deere & Co. v. Zahm*, 837 F. Supp. 346, 349 (D. Kan. 1993) (citing *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159, 1162–63 (10th Cir. 1991)).

[74] Doc. 12 at 46.

[75] 18 U.S.C.S. § 1962.

[76] *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).

committing "wire and mail fraud,"[77] as well as "obstruction of justice," "tampering w/ witness, victim, informant," and "retaliating against a witness, victim, informant."[78]  Plaintiff asserts New Haven SDA "wanted the AdventHealth hospitals to be the ones who profited from the rampant corruption and fraud that occurs within the health care industry,"[79] which caused New Haven SDA "to harass, coerce, extort, or intimidate" Plaintiff.[80]   Plaintiff's assertions are mere conclusory allegations without any factual support.  Plaintiff has alleged no specific facts to support his claim that Defendants committed "wire and mail fraud," criminally obstructed justice under 18 U.S.C. § 1503 (as discussed above), tampered with a victim, retaliated against a victim, or that Defendants constituted an enterprise.  While the Court liberally construes Plaintiff's *pro se* Amended Complaint, it will not add factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[81]  Plaintiff has failed to state a RICO claim upon which relief may be granted based on the limited facts pled in his Amended Complaint.

### 4.     Civil Rights Act

Next, Plaintiff alleges violations of "42 U.S.C. § 1981."[82]  Section 1981 protects the right of all persons to "make and enforce contracts" which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[83]

---

[77] Doc. 12 ¶58.

[78] *Id*. at 46.

[79] *Id.* ¶58.

[80] *Id.* ¶152.

[81] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[82] *Id.* ¶158.

[83] 42 U.S.C. § 1981(b).

Plaintiff asserts no specific factual allegations to support a § 1981 claim. Plaintiff asserts no particular contract loss or any particular benefit or privilege he was denied.[84] Rather, he asserts generally "exploitation" with regard to "enforcement of contracts."[85] These assertions are not specific to any particular action of any defendant in this case. Moreover, the Tenth Circuit has held that § 1981 does not extend to disability discrimination.[86] Accordingly, Plaintiff has failed to state a § 1981 against any Defendant.

### 5. Specific Relief under 28 U.S.C. § 1361

Plaintiff requests this Court to "compel law enforcement intervention and investigative resources to preserve the interests of the United States and all protected citizens."[87] 28 U.S.C. § 1361 gives district courts original jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."[88] To obtain mandamus relief, the plaintiff must show that he has a clear right to the relief sought, the defendant has a plainly defined and peremptory duty to perform the act in question, and no other adequate remedy is available.[89] Courts have no authority under the mandamus statute to order a government official to perform a discretionary duty.[90] The Attorney General possesses broad discretion whether to investigate or prosecute claims on behalf of the United States.[91] Plaintiff

---

[84] *See* Doc. 12 ¶¶158–169.

[85] *Id.* ¶160.

[86] *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 (10th Cir. 1997).

[87] *Id.* ¶6.

[88] *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam); *West v. Spellings*, 480 F. Supp. 2d 213, 217 (D. D.C. 2007).

[89] *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

[90] *See West*, 480 F. Supp. 2d at 217.

[91] *See, e.g.*, *Daiflon*, 449 U.S. at 36; *United States v. Andersen*, 940 F.2d 593, 596 (10th Cir. 1991).

has not and cannot establish a preemptory duty owed by the Department of Justice, and Plaintiff's motion to compel must be dismissed.

### C. State Law Claims

Finally, Plaintiff's remaining claims are brought under Kansas state law. The Court may decline to exercise supplemental jurisdiction if only issues of state law remain after the court has dismissed all federal claims.[92] Supplemental jurisdiction "is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants."[93] Ordinarily, if no federal claims remain before trial, the court should decline to exercise supplemental jurisdiction over the remaining state law claims.[94]

As discussed above, the Court has dismissed all federal claims. This case is at the pleading stage, and no discovery has occurred. Thus, the Court exercises its discretion and declines to assert supplemental jurisdiction over Plaintiff's remaining state law claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File Surreply (Doc. 21) is **granted,** and Defendants' Motion to Dismiss (Doc. 15) is **granted**. This case is dismissed in its entirety.

**IT IS SO ORDERED.**

Dated: August 26, 2019

                                                 S/ Julie A. Robinson
                                                 JULIE A. ROBINSON
                                                 CHIEF UNITED STATES DISTRICT JUDGE

---

[92] 28 U.S.C. § 1367(c)(3).

[93] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997); *see Brooks v. Gaenzle*, 614 F.3d 1213, 1229–30 (10th Cir. 2010).

[94] *Id.* (citations omitted).